IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00830-PAB-NRN

JEFFREY T. MAEHR,

Plaintiff,

v.

INTERNAL REVENUE SERVICE / UNITED STATES

Defendant.

---

**REPORT AND RECOMMENDATION ON
DEFENDANT INTERNAL REVNUE SERVICE'S MOTION TO DISMISS
(Dkt. #12)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter is before the Court on Defendant's Internal Revenue Service's ("IRS") Motion to Dismiss, filed June 6, 2022. Dkt. #12. The Motion was referred by Judge Brimmer the same day. Dkt. #13. Plaintiff Jeffrey Maehr filed an opposition on July 21, 2022. Dkt. #15. The IRS filed its reply in support of the Motion on August 19, 2022. Dkt. #17. I heard argument by the Parties on the Motion on August 26, 2022. For the reasons set forth below, the Court **RECOMMENDS** that the Motion to Dismiss be **GRANTED**.

## BACKGROUND

**Mr. Maehr's Litigation**[1]

Mr. Maehr has a long history of litigation with the IRS. This case is the latest in a series of no less than 17 cases brought by Mr. Maehr that arise out of the IRS's allegedly "frivolous, erroneous, and arbitrary tax assessment and garnishment" for the tax years 2003–06. *See* Compl., Dkt. #1 at 6.[2] Mr. Maehr's antipathy toward the IRS stems from tax assessments levied against him over the 2003–06 tax years. Mr. Maehr says that the IRS alleges he made over $1,000,000 during that time when, in fact, his total life's wages since 1969 are only approximately $250,000. *See id*. at 19–20.

---

[1] Because Mr. Maehr proceeds pro se, the Court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (the court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). A plaintiff's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

[2] Some of the cases filed by Mr. Maehr include: *Maehr v. United States*, No. 3:08-mc-00067-W, 2008 WL 2705605 (W.D.N.C. July 10, 2008); *Maehr v. United States*, No. MC 08-00018-BB, 2008 WL 4617375 (D.N.M. Sept. 10, 2008); *Maehr v. United States*, No. C 08-80218 (N.D. Cal. April 2, 2009); *Maehr v. United States*, No. A-09-CA-097 (W.D. Tex. April 10, 2009); *Maehr v. United States*, No. 8:08CV190, 2009 WL 2507457 (D. Neb. Aug. 13, 2009); *Maehr v. United States*, No. 08-cv-02274-LTB-KLM, 2009 WL 1324239 (D. Colo. May 1, 2009); *Maehr v. Comm'r*, No. 15-mc-00127-JLK-MEH, 2015 WL 5025363 (D. Colo. July 24, 2015), *aff'd*, 2016 WL 475402 (10th Cir. Feb. 8, 2016); *Maehr v. United States*, No. 17-1000 T, 137 Fed. Cl. 805 (2018); *Maehr v. Koskinen*, No. 16-cv-00512-PAB-MJW, 2018 WL 1406877 (D. Colo. Mar. 21, 2018).

Most recently, Mr. Maehr filed Freedom of Information Act ("FOIA") requests seeking from the IRS the underlying, pre-assessment documentation or proof on which the IRS based the disputed 2003–06 assessments. Those FOIA requests, which ended in litigation, concluded with the IRS attesting that it had done a thorough search and had not been able to locate additional documents that would have supported the 2003–06 assessments about which Mr. Maehr continues to complain. Mr. Maehr's FOIA case was ultimately dismissed with prejudice on summary judgment after the IRS submitted affidavits attesting to the thoroughness of its searches, despite the fact that the searches apparently discovered few new documents. *See* Order Accepting Magistrate Judge's Recommendation, *Maehr v. Internal Revenue Serv.*, No. 19-cv-03464-PAB-NRN (D. Colo. June 25, 2021) (accepting recommendation that motion for summary judgment should be granted).

The claimed lack of any supporting evidence to justify the 2003–06 tax assessments has been an on-going source to frustration for Mr. Maehr. *See* Dkt. #1 at 19 ("Plaintiff has been in at least 17 initial suits against Defendant over the last 10 plus years requesting proof of debt, proof of liability and proof of taxable income that Plaintiff allegedly received from any taxable event creating a liability for said assessment and garnishment, yet without any valid documentation or rebuttal other than 'we say so'.").

In addition to the FOIA lawsuit, there has been another recent development related to another of Mr. Maehr's lawsuits. Mr. Maehr previously had challenged the IRS's certification to the United States Department of State ("State Department") of Mr. Maehr's delinquent tax debt. As a result of the IRS's certification, Mr. Maehr's United States passport had been revoked by the State Department. The passport revocation

prompted another suit, with the Tenth Circuit Court of Appeals ultimately affirming the revocation based on Mr. Maehr's delinquent tax debt. *See Maehr v. United States Dep't of State*, 5 F.4th 1100 (10th Cir. 2021) (holding that restricting international travel of taxpayer who was seriously delinquent in paying his taxes by revoking his passport was rationally based on legitimate government interest), *cert. denied* 142 S. Ct. 1123 (2022). But, as alleged in the current Complaint, on the day of the United States Supreme Court's conference on Mr. Maehr's petition for certiorari on the passport question, the IRS reversed its certification to the State Department.  This means that, in theory, Mr. Maehr should get his passport back. *See* Dkt. #1 at 16–17. But, as alleged in the Complaint, despite Mr. Meahr's repeated inquiries, he has not received any response from the State Department about the status of his passport, raising the question "whether he will EVER receive his passport back." *Id.* at 21.

In light of the alleged lack of any substantive evidence produced in the FOIA case by the IRS to support the 2003–06 assessments, Mr. Maehr now brings this lawsuit, appearing to again challenge the disputed 2003–06 assessments and seeking additional relief and compensation related to the allegedly erroneous assessments. *See id*. at 12 ("The Defendant has NO lawful or constitutional basis for the arbitrary manufacturing of records and the subsequent assessment and garnishment of any American without having the burden of proving said assessment, especially when challenged."). As relief, he seeks, among other things, the following:

- an order that the IRS "remove Plaintiff's social security garnishment order and Notice of Levy with the Social Security Administration";

- the return of all monies garnished from Plaintiff's social security funds from the beginning until the last garnishment of record;

- reimbursement for court filing/service costs, and reasonable costs for the time needed for the preparation of the suit;

- an order removing the Tax Lien/Notice of Levy from the Archuleta County, Colorado Recorder's Office records;

- an order removing any tax lien/notice of levy from all credit reporting agencies;

- an order reinstating Plaintiff's United States passport;

- compensatory damages for the allegedly frivolous and malicious tax assessments plus punitive damages;

- an award of the initial amount of the frivolous and malicious assessment in the amount of $309,000;

- a sanction against the United States in the amount of $42,000 for failing to maintain records as required by law; and

- an order that a grand jury be summoned to investigate the IRS's questionable and possibly illegal activities;

*Id*. at 22–23.

Mr. Maehr also appears to ask for the following additional relief: a declaration that he has provided ample evidence of his current impoverished financial condition under 26 U.S.C. § 6342(a)(1)(D)[3] and that the debt is uncollectable. He asserts that the assessment was made many years ago, and the IRS, despite the ongoing garnishment, will never satisfy the debt in Mr. Maehr's lifetime, continuing to impoverish him for the rest of his life. He also asks for a court order that there be an assessment adjustment record provided to the Social Security Administration, along with properly calculated wages for Mr. Maehr.

---

[3] Presumably, Mr. Maehr means 26 U.S.C. § 6343.

### The Defendant IRS's Motion to Dismiss

The IRS has moved to dismiss on the ground that Mr. Maehr seeks (again) to overturn tax liabilities "that have already been adjudicated." Dkt. #12 at 2. The IRS seeks dismissal primarily on claim preclusion and statutory jurisdictional grounds.

As the IRS recounts in its Motion (almost *ad nauseum*), Mr. Maehr previously has tried and failed many times to challenge the assessments and levies that he again challenges in this case. Mr. Maehr first disputed the 2003–06 assessments about which he is complaining in United States Tax Court in 2011. The IRS has provided a copy of the August 19, 2011 Tax Court decision, Case No. 10758-11, as Exhibit A to its Motion to Dismiss. Unfortunately, the Tax Court decision did not provide much specific justification for affirming the various assessments. Instead, it found that Mr. Maehr's pro se petition did not conform to Tax Court Rule 34, which governs the form of the petition. And, because Mr. Maehr's challenge in the Tax Court did not contain specific challenges to the Commissioner's calculations or allege facts necessary to resolve any alleged errors, the Tax Court ruled in the IRS's favor without providing any detailed findings regarding the underlying tax assessments.

The Tenth Circuit then affirmed the Tax Court's decision dismissing Mr. Maehr's challenge to the assessments. In that affirmance, the Tenth Circuit did give some hint of the arguments Mr. Maehr had tried to raise in the Tax Court. *See Maehr v. Comm'r of Internal Revenue*, 480 F. App'x 921 (10th Cir. 2012) (describing Mr. Maehr's assertions in his petition to the Tax Court as including "[that] the Internal Revenue Service lacked standing; the Internal Revenue Code has not been enacted into 'positive law'; the Internal Revenue Service is not a lawfully created agency but is, instead, an agency of

6

the International Monetary Fund; he is not a taxpayer because wages are not income; Form 1040 is illegitimate because it is not imprinted with an OMB control number; and the Sixteenth Amendment does not authorize the imposition of federal income taxes on citizens of the individual states"). Ultimately, the Tenth Circuit found that the Tax Court had correctly determined that Mr. Maehr's petition failed to state a claim because the petition contained no assignments of the errors he alleged were committed by the IRS in the determination of Mr. Maehr's income tax deficiencies, nor did it contain any facts upon which to base an assignment of error. *Id.* at 923.

As the IRS points out, by statute (with limited exceptions not applicable here), once a "taxpayer files a [timely] petition with the Tax Court . . . no suit by the taxpayer for the recovery of any part of the tax shall be instituted in any court" for those tax years. *See* 26 U.S.C. § 6512(a) (laying out rule and exceptions). Thus, any subsequent lawsuits brought by Mr. Maehr to recover any part of the tax for the disputed years were barred by his failed Tax Court challenge. Indeed, later suits by Mr. Maehr again seeking to challenge the validity of the assessments were dismissed for lack of jurisdiction because they were deemed to be collateral attacks on the Tax Court's judgment. *See, e.g., Maehr v. United States*, 137 Fed. Cl. at 814 (dismissing suit brought in court of Federal Claims because, among other reasons, Mr. Maehr's initial decision to file his tax challenge in the Tax Court placed such claims exclusively within the Tax Court's jurisdiction); *Maehr v. United States*, Civ. No. 18-cv-02273-PAB-NRN, 2019 WL 4164872, at *2 (Sept. 3, 2019) (adopting magistrate judge's recommendation that case challenging final judgment of Tax Court should be dismissed based on 26 U.S.C. §

6512(a) which "bars a suit for refund involving a tax year for which a Tax Court petition contesting a deficiency determination has been filed").

In addition, even without the statutory jurisdictional bar, the IRS argues that any challenge to Mr. Maehr's tax liabilities is barred by the doctrine of res judicata, also known as claim preclusion. Under the doctrine, a final decision by a prior court is not subject to collateral attack in a later proceeding. *See* Dkt. #12 at 8. The IRS argues that the Tax Court's decision, which was affirmed on appeal, precludes any attempt by Mr. Maehr in this case to challenge the disputed assessments. *Id*. In the IRS's view, if Mr. Maehr had wanted to dispute the IRS's calculations, or to challenge the underlying basis for the assessments, "he was responsible for showing what he believed his taxable income to be in the Tax Court." *Id.* at 9.

The IRS acknowledges it recently reversed the certification to the State Department that had prompted the revocation of Mr. Maehr's passport. See *id*. at 2–3. The notice sent to Mr. Maehr on February 21, 2022 reads in part:

> The IRS previously notified the State Department that you were certified as owing a seriously delinquent tax debt. You certification has been reversed. As required by the [Fixing America's Surface Transportation] Act, we have notified the State Department of the reversal of your certification. As a result of the IRS notification, the State Department is no longer required to deny your application for a passport or passport renewal and cannot revoke your current passport because you owe tax.

*See* Dkt. #12-2 (IRS Notice Letter). The IRS's explanation is that "the assessments are old and had been written off." Dkt. #12 at 4 (citing 26 U.S.C. § 6502, which generally requires the IRS to collect within ten years of assessment). In conferral on the Motion to Dismiss, IRS counsel in this litigation has explicitly told Mr. Maehr that the "assessments were very old and were likely no longer subject to collection." *Id.* at 5.

8

Therefore, with respect to the passport claim, the IRS says Mr. Maehr has already received the only applicable relief under the statute—the IRS has reversed the certification, so, in the IRS's view, there is no further controversy regarding his passport. *Id.* at 11.

The IRS also argues other aspects of Mr. Maehr's claim are precluded by the Anti-Injunction Act and the Declaratory Judgment Act, which bar suits to restrain the assessment or collection of federal taxes. *See id*. at 11 (citing 26 U.S.C. § 7421(a) and 28 U.S.C. § 2201(a)); *see also*, *Ambort v. United States*, 392 F.3d 1138, 1140 (10th Cir. 2004) (explaining that the "Declaratory Judgment Act prohibits declaratory judgments in matters relating to an individual's federal taxes," and the Anti-Injunction Act bars individuals from maintaining "any suit for the purpose of restraining the collection of any tax").

The IRS notes there are certain exceptions to the Anti-Injunction Act, including the judicially-crafted *Regan* exception, named for the Supreme Court decision, *South Carolina v. Regan*, 465 U.S. 367 (1984), and the *Williams Packing* exception, established in *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1 (1962). Under *Regan*, the Supreme Court declared that the Anti-Injunction Act was not intended to bar action where Congress had not provided the plaintiff with an alternative legal way to challenge the validity of a tax. 465 U.S. at 378. Under *Williams Packing*, a second judicial exception applies if "it is clear that under no circumstances could the Government ultimately prevail" and "if equity jurisdiction otherwise exists." 370 U.S. at 7; *see also LNV Corp. v. Hook*, 638 F. App'x 667, 673 (10th Cir. 2015) (addressing the *Regan* and *Williams Packing* standards). The IRS argues that the *Regan* exception

9

cannot apply because Mr. Maehr in fact had a means of challenging the validity of the tax—via the Tax Court—and he lost there. The IRS further argues that the *Williams Packing* exception cannot apply because Mr. Maehr cannot show that the Government cannot prevail—as it already did prevail, both in the Tax Court and everywhere else that Mr. Maehr sought to challenge his tax liabilities. Dkt #12 at 13.

The IRS concludes its opposition by repeating that the assessments are old and "by now have been written off," and there have not been any material collection efforts since mid-2020, implying that Mr. Maehr no longer has any outstanding liability. *Id*. at 14.

## ANALYSIS

First, I agree with the United States that Mr. Maehr's effort to again challenge the 2003–06 tax assessments, based on the IRS' apparent inability to locate any underlying documentation, must fail on both jurisdictional and issue preclusion grounds. With the assessments once having been challenged in Tax Court (and the Tax Court's determination having been upheld by the Tenth Circuit), by statute, this Court lacks jurisdiction to consider any further challenge to the tax assessments. *See* 26 U.S.C. § 6512(a); *see also Maehr*, 137 Fed. Cl. at 814 (initial decision to file his tax challenge in the Tax Court placed such claims exclusively within the Tax Court's jurisdiction); *Maehr*, 2019 WL 4164872, at *2 (dismissing case based on 26 U.S.C. § 6512(a)).

Moreover, even in the absence of the statute limiting this Court's jurisdiction and ability to consider another challenge to the assessments, the doctrine of claim preclusion (res judicata) would prevent the reopening of any dispute about the validity of

10

the assessments. Where a matter has once been litigated between parties to finality, under normal circumstances and absent fraud on the court, it cannot be relitigated:

> The general rule of res judicata applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment.

*C.I.R. v. Sunnen*, 333 U.S. 591, 597 (U.S. 1948) (internal citations omitted). In *Sunnen*, the Supreme Court applied the principles of res judicata to decisions by the Tax Court. *Id*. at 598–99. Following the Supreme Court's lead, the Tenth Circuit, too, has applied to doctrine of res judicata to prevent collateral attacks on Tax Court decisions. *See United States v. Annis*, 634 F.2d 1270, 1272 (10th Cir. 1980) (finding that taxpayer was barred by doctrine of res judicata from relitigating his liability for taxes in suit to foreclose federal tax lien where such issue had previously been decided against him by the tax court and no appeal had been taken). Thus, to the extent that any of the relief Mr. Maehr seeks would necessarily implicate the validity of the assessments for the tax years 2003–06 or of prior garnishments of federal benefits to which he would otherwise have been entitled, such relief is precluded by the prior Tax Court decisions.

The Court also agrees with the IRS that, with respect to his passport, Mr. Maehr has received all the relief he is entitled to *from the IRS*. He complains that the IRS reversed its certification decision, but he has not gotten his passport back. But, based on this Court's understanding of the process, it is the State Department that has control

11

over the revocation of Mr. Maehr's passport and over any decision whether to issue a new passport. *See Maehr,* 5 F.4th at 1105 (citing 22 U.S.C. §§ 2714a(e)(1) and (2) for the proposition that it is the Secretary of State who is prohibited from issuing a new passport or charged with deciding to revoke a previously issued passport on receipt of the certification of a tax delinquency from the Secretary of the Treasury). If the State Department is refusing to return Mr. Maehr's passport or issue him a new one, then that is a complaint that should be directed toward that agency, not the IRS. *See* 22 U.S.C. § 2714a(g) (directing that the Secretary of State "shall remove from the individual's record the certification with respect to such debt" if the Secretary of State receives a notice from the Secretary of the Treasury that the individual ceases to have a seriously delinquent tax debt). All the IRS can do is reverse the certification that prompted the revocation of Mr. Maehr's passport in the first place, which it has done. *See* Dkt. #12-2 (IRS Notice Letter).

Thus, any claims for retrospective relief regarding the 2003–06 tax assessments, and any prospective relief regarding his passport situation, must be dismissed. However, that does not end the analysis.

Beyond revisiting the initial assessments, Mr. Maehr also seeks certain prospective relief regarding collateral consequences from his 2003–06 assessments. Specifically, he asks the IRS to remove the Social Security garnishment order and Notice of Levy with the Social Security Administration. Dkt. #1 at 22. He further asks the Court to order removal of the Tax Lien/Notice of Levy on the Plaintiff filed in the Clerk and Recorder's Office for Archuleta County, Colorado. *Id*. The IRS itself has acknowledged that its 2003–06 assessments and the associated levies are old and the

debt is likely uncollectable due to the ten-year statutory collections period. Dkt. #12 at 14. This raises the question whether Mr. Maehr is entitled to removal of levies which are intended to collect debts which have now been written off.

Indeed, once the government has assessed a tax debt, it generally must collect such debt by levy or court proceeding within ten years after the assessment. 26 U.S.C. § 6502(a)(1). And federal regulations provide that a levy made outside the ten-year statutory collections period must generally be released. *See* 26 C.F.R. § 301.6343-1(b)(1)(i). However, a levy made within the collections period on a fixed and determinable right to payment, which right includes payments to be made after the period of limitations expires, *does not become unenforceable* upon the termination of the period of limitations and *will not be released* unless the liability is satisfied. 26 C.F.R. § 301.6343-1(b)(ii). Thus, Mr. Maehr's claims for prospective relief with respect to the levies also fail.

In a somewhat similar case, *Dean v. United States*, 861 F. App'x 349 (11th Cir. 2021), the Eleventh Circuit confronted a situation where an individual sued for damages because the IRS continued to maintain an old levy on his Social Security benefits after the end of the ten-year statutory collection period. The plaintiff there had alleged IRS employees were unlawfully charging and collecting interest on a tax debt that had been "written-off" when the ten-year collection period ended. The Eleventh Circuit affirmed dismissal of the suit:

> The district court did not err in dismissing Dean's complaint because the factual allegations in his complaint, taken as true, did not state a claim under § 7433. Dean's complaint was based on his misapprehension of the legal effect of the expiration of the statutory collections period and the IRS's release of its liens on his property. It is true that the IRS could not have issued a notice of levy seizing his Social Security benefit after the

> collection statute of limitations passed in 2017. But it did not do so. Instead, the IRS seized his entire Social Security benefit—that is, his "fixed and determinable right to payment" of his Social Security benefit in monthly installments—immediately upon issuing the notice of levy in June 2013. 26 C.F.R. § 301.6343-1(b)(1)(ii); see *Phelps*, 421 U.S. at 337, 95 S. Ct. 1728. Having seized his entire benefit before the expiration of the collection limitations period, the IRS was not required to relinquish it after the period expired. See 26 C.F.R. § 301.6343-1(b)(1)(ii). Thus, the district court did not err in disregarding Dean's mistaken legal conclusions regarding the continuing viability of the 2013 levy, or in concluding that the remaining allegations in his complaint failed to state a claim for unlawful collection action by IRS employees.

861 F. App'x at 353.

The same logic applies here. The IRS levied Mr. Maehr's Social Security benefits within the ten-year limitation period, so there is no statutory or legal basis for obtaining an order releasing those levies. And, to the extent such an order is a declaration related to an individual taxes, it is barred by the Declaratory Judgment Act. *Ambort*, 392 F.3d at 1140. Further, to the extent that such an order would constitute an injunction implicating the United States' ability to collect a tax, the Anti-Injunction Act also bars the requested relief. *See* 26 U.S.C. § 7421(a). The allegations in the Complaint do not make clear that there are no circumstances in which the IRS could ultimately prevail. Therefore, this Court lacks subject matter jurisdiction to consider injunctive relief for the Complaint as currently pled. *See In re Walter Energy, Inc.*, 911 F.3d 1121, 1136 (11th Cir. 2018) ("When the Anti-Injunction Act applies, it deprives federal courts of jurisdiction.").

## CONCLUSION

For the foregoing reasons, the Court agrees with the IRS that Mr. Maehr's claims and this lawsuit should be dismissed. It is hereby **RECOMMENDED** that the Motion to Dismiss (Dkt. #12) be **GRANTED** and that Mr. Maehr's Complaint (Dkt. #1) be **DISMISSED**.

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412–13 (10th Cir. 1996).

Date: November 8, 2022

_____
N. Reid Neureiter
United States Magistrate Judge